## RANDALL v. NATHAN & COX.

No. 21631. Nov. 21, 1933.

J. E. Williams, for plaintiff in error.

Wm. G. Davisson for defendant in error.

RILEY, C. J. This is an action commenced by plaintiff in error for damages for the alleged conversion of certain oil well casing. Plaintiff, being the owner of two oil and gas mining leases, sold and assigned same to one Charles N. Harmon. The consideration expressed in the assignment was, in each case, the sum of $1 and other valuable consideration. Harmon executed and delivered his two promissory notes in the sum of $4,000 each, as a part of the consideration for said assignments, and executed a mortgage covering said leases, "together with all personal property of every kind and description, including pumps, tanks, tubing, casing, and all other equipment now on said premises, as well as any other equipment that may be placed upon said premises for the operation of said property, or for the development thereof during the life of this mortgage." This mortgage was given to secure the said notes. Nothing was said in either of the assignments about drilling any wells on the premises, but the mortgage provided:

"In addition to the payment of said notes at maturity the party of the second part agrees that he will drill or cause to be drilled two additional wells upon the leases hereinabove described, to the depth of at least 1,400 feet unless oil or gas in paying quantities shall be encountered at a lesser depth, both of said wells to be completed and producing on or before four months from this date.

"It is further understood that failure to pay said notes or either of them or the interest due thereon, or the failure to drill the wells hereinabove described, or either of them, on the date of the maturity of said note or notes or interest or the date of the completion of said well, that said mortgage or the holder of the above notes or either of them, may at his option declare all of said notes due and payable and the said mortgagee or the holder of said notes or any of them shall have the right to bring suit upon said notes immediately and without notice to the mortgagor."

The mortgage and the notes appear to be dated January 19, 1928, but the mortgage was acknowledged April 25, 1928, and

was filed for record May 9, 1928. It was not indexed and filed as a chattel mortgage, but was recorded in the mortgage record book in the county clerk's office. The assignments of the leases from plaintiff to Harmon were dated and acknowledged February 1, 1928. On that date Harmon assigned, in writing, all his right, title, and interest in and to said leases, together with all personal property used or obtained in connection therewith, to a corporation known as Yale Associates, Inc.

Thereafter defendants, Nathan & Cox, sold to Yale Associates, Inc., hereinafter referred to as the corporation, the oil well casing here in controversy. This casing was used in drilling oil wells on the leased premises, presumably the two oil wells that Harmon agreed in the mortgage to drill. After the wells were completed, the casing above mentioned was drawn from the wells and sold back to defendants. Plaintiff sued for its alleged value, $1,000, as in conversion as having been covered by his mortgage.

The casing here involved having been placed in and used in the wells on the lease only temporarily, and not having been so attached as to make its removal impossible without injury or damage to the leasehold estate, the question here involved is whether or not it was covered by that clause or provision in the mortgage as to after-acquired property, reading as follows:

"Any other equipment that may be placed upon said premises for the operation of said property, or for the development thereof, during the life of this mortgage."

Had the casing been placed thereon by the mortgagor, Harmon, as a part of the equipment, there can be no question but that it would have become subject to the mortgage lien. But such is not the case. It was placed there by the corporation, the subsequent purchaser of the leasehold. It must be borne in mind that the corporation was not a party to the mortgage. It did not assume the payment of the indebtedness secured by the mortgage. It purchased the leasehold estate and the personal property connected therewith subject to the mortgage. It did not even contract or agree to drill the additional wells, although it was probably necessary that it do so in order to prevent the acceleration of the due date of the notes and the foreclosure of the mortgage.

It is difficult to understand by what rule of law the property could be made subject to the mortgage lien. Of course, any property which attached to the leasehold in such a way as to make it a part of the leasehold estate, and which could not be removed without injury or damage to such estate, would and did become subject to the mortgage lien. But the evidence is that the casing in question was used only as temporary casing. It was shown that it was drawn from the wells without injury or damage to the leasehold. It never became the property of the mortgagor, nor did it become a part of the leasehold estate. The removal of the casing took nothing from the value of the lease as it existed at the time it was mortgaged by Harmon to plaintiff.

The rule appears to be that where a mortgage is made to extend to or cover subsequently acquired property, such as additions to or replenishments of a stock of goods or merchandise, it does not cover property already subject to some other lien, or property owned by another person, and does not cover goods added by a new purchaser who has already purchased the original stock. Anderson v. Howard, 49 Ga. 313.

Plaintiff foreclosed his mortgage and sold the lease and all the personal property then connected therewith. It was insufficient to pay the indebtedness in full, and it was on account of the deficiency that plaintiff claimed the conversion of the casing by the purchase thereof from the corporation by the defendants.

The cause was tried to the court without a jury and the trial court found and held generally for the defendants. In this we think the trial court was right.

Section 7409, C. O. S. 1921 [O. S. 1931, sec. 10943], provides that an agreement may be made to create a lien upon property not yet acquired or not yet in existence by the party agreeing to give the lien. And in such case the lien attaches when the party agreeing to give it acquires an interest therein, to the extent of such interest.

This section has been construed a number of times, and provisions in a chattel mortgage covering after-acquired property are generally upheld. In Union Nat. Bank v. Leidecker Tool Co., 72 Okla. 121, 178 P. 690, it was held:

"A mortgage upon property to be acquired after its execution by the mortgagor is valid, and the lien created thereby attaches to such property as soon as it is acquired

by the mortgagor to the extent of the interest acquired by him."

In the body of the opinion it is said:

"The lien only attaches to the extent of the interest acquired by the mortgagor."

If this be true, then it cannot be said that the after-acquired property clause of the mortgage could in any event create a lien upon property in which the mortgagor never acquired any interest. Such is the case as shown by the uncontradicted evidence.

The judgment is therefore affirmed.

SWINDALL, ANDREWS, OSBORN, BUSBY, and WELCH, JJ., concur. McNEILL, J., dissents. CULLISON, V. C. J., and BAYLESS, J., absent.